In re NATIONAL CENTURY FI-NANCIAL ENTERPRISES, INC., et al., Debtor.

Amedisys, Inc., et al., Plaintiffs,

v.

JP Morgan Chase Manhattan Bank as Trustee, NPF VI, Inc., National Century Financial Enterprises, Inc. and National Premier Financial Services, Inc., Defendants.

Bankruptcy No. 02–65235.
Adversary No. 02–2576.

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

Dec. 22, 2005.

Matthew A. Kairis, Mary R. True, Jones Day, Columbus, OH, Paul E. Harner, Jones Day, Chicago, IL, for Debtors/Appellees National Century Financial Enterprises, et al.

William C. Wilkinson, O. Judson Scheaf, III, John B. Kopf, Thompson Hine LLP, Columbus, OH, for JPMorgan Chase Bank, former Indenture Trustee.

Daniel A. DeMarco, Marc J. Kessler, Hahn Loeser & Parks LLP, Cleveland, OH, Joseph E. Friend, Stephen F. Chiccarelli, Peter A. Kopfinger, Kaye M. Caballero, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, LA, for Amedisys, Inc., et al.

### MEMORANDUM OPINION AND ORDER ON JOINT MOTION TO STRIKE PORTIONS OF RECORD [ON APPEAL] DESIGNATED BY AMEDISYS, INC.

DONALD E. CALHOUN, JR., Bankruptcy Judge.

Defendants National Century Financial Enterprises, Inc. ("NCFE") and JP Morgan Chase Manhattan Bank ("JP Morgan") disagree with Plaintiffs, Amedisys, Inc. and its related entities ("Amedisys"), as to whether certain items should be included in the record on appeal. Amedisys has appealed the Court's order granting partial summary judgment to the Defendants ("Order").[1] *See Amedisys, Inc. v. JP Morgan Chase Manhattan Bank (In re Nat'l Cent. Fin. Enters., Inc.)*, 310 B.R. 580, 584 (Bankr.S.D.Ohio 2004). Amedisys has designated items to be included in the record on appeal, which prompted NCFE and JP Morgan (collectively "Movants") to request that some of the designated items be stricken.

The Court finds that it has the authority to adjudicate this dispute and determine the contents of the record on appeal. All the items that Movants seek to strike were never filed with or placed before the Court prior to its entry of the Order. Thus, the Court did not consider these items when it issued the Order. For this reason, the Court will grant Movants' request to strike the contested items from the record on appeal.

### I. Jurisdiction—Adversary Proceeding

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### II. Procedural Background

#### A. The Amedisys Adversary Proceeding

##### 1. Pleadings

Amedisys commenced an action in the United States District Court for the Southern District of Ohio, Eastern Division against JP Morgan, NCFE, NPF VI, NPFS and Lance Poulsen on November 8, 2002. *See Nat'l Cent. Fin. Enters.*, 310 B.R. at 584. Amedisys alleged that it submitted $7.3 million in receivables to

---

1. Defendants include NCFE, JP Morgan, NPF VI, Inc. ("NPF VI") and National Premier Financial Services, Inc. ("NPFS").

NPV VI under a sale and subservicing agreement ("Sale Agreement") without receiving payment in return. Amedisys sought "the turnover of some $7.3 million which purportedly represented the proceeds of 'non-purchased accounts receivable.'" *Id.*

Subsequently, NCFE, NPF VI and NPFS (collectively "Debtors") each filed voluntary petitions for Chapter 11 bankruptcy relief on November 18, 2002; the Court eventually consolidated these cases for procedural purposes and administered them jointly. On December 19, 2002, the district court transferred this action to this Court. On February 21, 2003, Amedisys filed a first amended complaint naming JP Morgan and the Debtors as Defendants but removing JP Morgan as a Defendant to certain causes of action. Later, on January 16, 2004, Amedisys filed a second amended complaint ("Second Amended Complaint"), adding new counts and theories, but leaving the Defendants unchanged. *See id.* at 585.

The Second Amended Complaint alleged that NPF VI never purchased the receivables at issue and that the receivables still belong to Amedisys. Amedisys sought the return of $7.3 million (the purported value of those receivables) by asserting claims such as breach of fiduciary duty, breach of the Sale Agreement, express trust, constructive trust, resulting trust, turnover and conversion.

**2. Order Granting Partial Summary Judgment**

Debtors and JP Morgan filed motions for summary judgment, which this Court granted as to all claims but the one for breach of the Sale Agreement by the Debtors. Amedisys argued that it retained ownership of the receivables because NPF VI did not pay for them. The Court rejected the contention that NPF VI never purchased the receivables by concluding that Amedisys waived its right to receive the purchase price at the time the receivables were submitted to NPF VI.

> The Court ... concludes that Amedisys waived its right to receive the purchase price of the accounts receivable submitted in October, 2002 pursuant to the Sale Agreement and thus is estopped from claiming that NPF VI did not purchase the accounts receivable. Overwhelming evidence submitted into the record shows that ... Amedisys sold the receivables to NCFE but did not request funding for the sale until the ca-prices of its own business cycle called for revenues.
>
> ... [A]ll of the evidence, including direct deposition testimony from Amedisys' own CFO, shows that Amedisys did indeed sell its accounts receivable to NCFE, and they were of the "purchased accounts receivable" sort defined in the Sale Agreement.

*Id.* at 592.

In reaching this conclusion, the Court relied on statements made by Mr. Greg Browne, the CFO of Amedisys. Mr. Browne testified that Amedisys began "request[ing] funding as we needed it" in April 2002. *Id.* He further testified that Amedisys sometimes "did not request the full amount" for the receivables, and he acknowledged that "no request was made" for funding during the first three weeks of October 2002. *Id.* at 593. Mr. Browne sent two emails (one to Roger Faulkenberry of NCFE and one to Huntington Bank) in which he stated that he considered the receivables at issue to be "purchased receivables." This evidence led the Court to find that NPF VI had purchased the receivables from Amedisys even though it did not pay for them at the time. *Id.* at 595 ("In the present case, Amedisys, although well aware of its rights, voluntarily

and intentionally requested NCFE to withhold payments in anticipation of an acquisition.").

According to Amedisys, no such waiver occurred because the plain terms of the Sale Agreement provided for Amedisys to receive prompt payment for the receivables Amedisys submitted to NPF VI. Amedisys argued that the terms of the Sale Agreement had not been properly modified or waived by a signed writing. *See id.* at 587 (noting that the terms of the Sale Agreement could not be modified unless the modification was "in writing and signed by each of the parties hereto."). The Court rejected this contention by finding that emails and reconciliation reports—exchanged between Amedisys and NPF VI on a weekly basis—satisfied the writing and signature requirements thereby properly modifying the terms of the Sale Agreement. *See id.* at 595–96 (citations omitted). Each week, Amedisys sent an email notifying NCFE how much funding it was requesting for that week. A reconciliation report was sent back to Amedisys showing the amount requested. The Court determined that these emails and reports modified the Sale Agreement when Amedisys started requesting amounts other than the full purchase price of the receivables. *See id.*

Based in large part on its finding that NPF VI had purchased the receivables at issue, the Court ultimately dismissed all the claims against JP Morgan and all but one claim against Debtors in its Order dated May 27, 2004. The Court allowed the breach of Sale Agreement claim against the Debtors to proceed to trial, noting that Amedisys had presented sufficient evidence to support a general contractual claim for non-payment. *See id.* at 601–02.

Amedisys filed a motion for leave to appeal with the United States District Court for the Southern District of Ohio on June 7, 2004. Amedisys argued that the Order was final and appealable because it finally resolved a discrete dispute within the case. Debtors emphasized the interlocutory nature of the Order and argued that a lack of exceptional circumstances existed to justify granting leave to appeal a non-final order. On September 15, 2004, the district court denied the request for leave to appeal mainly because a contract claim remained pending.[2]

### 3. Stipulation Resolving Remaining Claim

On April 14, 2005, Amedisys and the Debtors entered into a stipulation resolving the remaining contract claim. *See* Doc. 155 ("Stipulation"). The Stipulation allowed Amedisys a single unsecured claim (entitled to treatment as a Class C–6 unsecured claim under the plan) in the amount of $7,339,583.78, subject to certain adjustments, in return for dismissing its breach of Sale Agreement claim. The Stipulation served as a final appealable entry resolving the last remaining claim against the Debtors and allowing Amedisys to proceed with its appeal.

### III. Factual Background

#### A. Dispute over the Record on Appeal

After entry of the Stipulation, Amedisys began the appeal process anew by filing a timely notice of appeal and a designation of items to be included in the record on appeal and statement of issues.[3] This

---

**2.** *See* Doc. 173 *and Amedisys, Inc. v. JP Morgan Chase Bank, et al.,* No. C2–04–626, Doc. 4 (S.D.Ohio 2004).

**3.** The matters before the Court are: (1) Designation of Items to be Included in the Record on Appeal and Statement of Issues (Doc. 160) ("Designation"), (2) Joint Motion to Strike

prompted the Movants to ask the Court to strike several items Amedisys included within its Designation. The appeal has not been docketed with the district court.

The items Movants seek to have stricken ("Disputed Items") consist of various filings from another related civil action and three criminal cases. The chart, seen below, summarizes the Disputed Items.

| Nature of Dispute | Types of Items | Dates |
| --- | --- | --- |
| 1. UAT Lawsuit Civil Action | Pleadings and several motions to dismiss | 11/17/04–03/31/05 |
| 2. Brian J. Stucke Criminal Action | Information, plea agreement and entry of guilty plea | 12/08/03–12/11/03 |
| 3. Sherry L. Gibson Criminal Action | Information, plea agreement, entry of guilty plea and sentence | 08/08/03–06/29/04 |
| 4. John Allen Snoble Criminal Action | Information, plea agreement and entry of guilty plea | 11/10/04–11/17/04 |

*See* Designation at 16–18. In the UAT Lawsuit,[4] NCFE's post-confirmation successor-in-interest, the Unencumbered Assets Trust, alleged that JP Morgan, along with other entities, facilitated and knowingly participated in fraud allegedly perpetrated by NCFE on its creditors. The criminal actions purportedly involve former employees of one or more of the Debtors.

## B. Arguments of the Parties

Movants request that the Disputed Items be stricken from the record on appeal because none of the Disputed Items were in the record, considered or otherwise placed before the Court prior to its issuance of the Order now on appeal. Movants emphasize that it would have been impossible for this Court to even consider most of the Disputed Items (including all the designated litigation papers

from the UAT Lawsuit), because their filing dates followed the May 27, 2004 Order now on appeal.

Amedisys challenges this Court's authority to strike items included within the record on appeal. Amedisys argues that the text of Fed. R. Bankr.P. 8006 gives the parties considerable latitude in designating items for the record on appeal without expressly granting a bankruptcy court authority to strike such items.

If, however, the Court finds it has the authority to strike items from the record on appeal, Amedisys urges that the Disputed Items should remain within its Designation as they will provide a "complete understanding" of this case. Amedisys contends that allegations made in the UAT Lawsuit, along with the guilty pleas of former employees of the Debtors, will, in fact, contradict findings made by this Court in its Order. Thus, Amedisys wants the district court to consider these Disputed Items that it claims are at odds with the Order now on appeal.

Movants respond that this Court has the power to strike items designated in a record on appeal because actions in aid of an appeal are not beyond the authority of the bankruptcy court. Movants also argue that the Court, as the court in which the original record was made, is in the best position to adjudge what was submitted to it prior to issuing the Order. Movants assert that the Disputed Items must be excluded from the record on appeal because they were never placed before the Court before entry of the Order.

Portions of Record Designated by Amedisys, Inc. (Doc. 163) ("Motion to Strike"), (3) Objection of Amedisys, Inc. to Joint Motion to Strike Portions of Record Designated by Amedisys, Inc. (Doc. 167) ("Response"), and (4) Joint Reply to Objection of Amedisys, Inc. to

Joint Motion to Strike Portions of Appellate Record (Doc. 169) ("Reply").

4. *See The Unencumbered Assets Trust, et al. v. JP Morgan Chase Bank, et al.,* No. C2–04–1090 (S.D.Ohio 2004).

## IV. Legal Analysis

### A. Jurisdiction—Record on Appeal

The Court finds that it has the authority to adjudicate the present dispute over the contents of the record on appeal.

#### 1. Applicable Bankruptcy Rule

Federal Rules of Bankruptcy Procedure 8001–8020 detail the procedures for appeals from bankruptcy courts to district courts or bankruptcy appellate panels. Rule 8006, at issue here, outlines the timetable and procedures for designating the record and issues on appeal from a bankruptcy court ruling.

> Within 10 days after filing the notice of appeal ..., the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented. Within 10 days after the service of the appellant's statement the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal: ....

Fed. R. Bankr.P. 8006.

The appellant has the initial responsibility to designate the relevant items to be included in the record on appeal, together with the notice of appeal, the order appealed from and any opinion, findings of fact and conclusions of law. This list of designated items must be filed with the clerk of the bankruptcy court and served on the appellee. *See id.* The appellant, however, does not have the final word on the designation of items to be included in the record on appeal as the appellee may file and serve on the appellant a designation of additional items to be included. *See id.* Therefore, the record on appeal may include items designated by both parties.

Rule 8006 does not explicitly provide a mechanism for resolving disputes over items designated in a record on appeal. While "the rule provides the appellee with a remedy for perceived *under*inclusiveness-viz., the specifying of 'additional items' for designation[,]" Rule 8006 is silent as to a party's recourse should it believe that another's designation of items is overinclusive. *In re Dow Corning Corp.,* 263 B.R. 544, 546 (Bankr.E.D.Mich. 2001) (pointing out from the appellee's perspective that the rule "is conspicuously silent on an appellee's recourse should it believe that the appellant's list is *over*inclusive.").

#### 2. Majority Position—Inherent Authority

■ A majority of the courts conclude that a bankruptcy court has the power to rule on disputes over the contents of the appellate record. *See, e.g., WB, Ltd. v. Tobago Bay Trading Co. (In re Tobago Bay Trading Co.),* 142 B.R. 534, 536 (Bankr.N.D.Ga.1992) ("[F]ind[ing] that it retains jurisdiction for the limited purpose of adjudicating [a] dispute concerning the contents of the record on appeal."); *Metro N. St. Bank v. The Barrick Group, Inc. (In re Barrick Group, Inc.),* 100 B.R. 152, 154 (Bankr.D.Conn.1989) ("[B]ankruptcy court should determine in the first instance whether a disputed item in a designation of record on appeal played any part in its deliberations ... this court retains jurisdiction to consider and rule upon [an] objection [to the designation].") (citations omitted); *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 802 (E.D.Pa.1986) ("The Bankruptcy Court resolves disputes over the proper contents of the appellate record in the first instance.") (citation omitted); *Food Distrib. Ctr. v. Food Fair, Inc. (In re Food Fair, Inc.),* 15 B.R. 569, 572 (Bankr.S.D.N.Y.1981) ("This Court determines that it does have jurisdiction, in the first instance, to consider the proposed

modification of the record."); *Saco Loc. Dev. Corp. v. Armstrong Bus. Credit Corp. (In re Saco Loc. Dev. Corp.),* 13 B.R. 226, 229 (Bankr.D.Me.1981) (determining "that it does have jurisdiction to correct or modify the record on appeal").[5]

■ These courts subscribing to the majority position have found that such authority (over the record on appeal) should remain with the bankruptcy court. Leaving this authority with the bankruptcy court will assist the appeal process as the bankruptcy court is in the best position to possibly strip off items improperly designated in a record on appeal. Sitting as the court of first impression, a bankruptcy court, according to the majority position, knows whether the parties placed the items in dispute before the court prior to its issuance of an appealable order. "While the filing of a notice of appeal generally divests a bankruptcy court of jurisdiction to proceed with respect to matters raised by the appeal, *actions in aid of the appeal are not beyond its authority.*" *Barrick Group,* 100 B.R. at 154 (emphasis added) (citations omitted). *See also French Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson),* 255 B.R. 22, 23 (Bankr.N.D.Ill.2000) ("Despite pendency of an appeal from the judgment here, this Court has jurisdiction to enter orders pertaining to the appeal record in aid of the appeal process.") (citations omitted); *Tobago Bay,* 142 B.R. at 535 ("Nonetheless, 'actions in aid of the appeal are not beyond its authority.' ") (quoting *Barrick Group,* 100 B.R. at 154) (other citations omitted);

*In re Reid,* 107 B.R. 79, 83 n. 7 (Bankr. E.D.Va.1989) ("Generally, the timely filing of a notice of appeal divests the district court of authority to proceed further with respect to such matters, except in aid of the appeal.") (citation and internal quotation marks omitted).

Most recently, in *NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't. Stores, Inc.),* 320 B.R. 518, 520–21 (Bankr. S.D.N.Y.2005), a bankruptcy court adopted the majority position by concluding that it had the authority to resolve a dispute over the contents of a record on appeal. The *Ames* court held that the content of the record on appeal should be resolved by the bankruptcy court, "where the record was designated, and where the matter sought to be included in the record was (or should have been) presented." *Id.* at 520–21.[6] Stressing an even "more fundamental reason" for requiring that the content of the record on appeal be resolved by the bankruptcy court, the *Ames* court stated:

[T]he bankruptcy court knows best what was before it and what it considered in making its ruling. It is sometimes the case that [a] matter is submitted to a bankruptcy court in a way that, while consistent with notice and due process, evades formal docketing or designation. It also is sometimes the case that the bankruptcy court takes judicial notice of matters—such as earlier proceedings in that court. The bankruptcy judge, as the court that issued the decision and order appealed from, is in the best position to know what it considered. It also

5.  *But see Dow,* 263 B.R. at 548 ("[T]he better view is that the bankruptcy court has no discretion under Rule 8006 to strike designated items from the record on appeal.") (footnote omitted).

6.  The *Ames* court relied in part on an unreported decision by the district court in *Enron Power Mktg. Inc. v. Nev. Power Co. (In re Enron Corp.),* No. 02–2520, Unreported Decision on Mot. by Enron Power Mktg. Inc. to Strike Items from the Defs.' Designations of R. on Appeal (Hrg. Tr. of 2/10/05 at 4), where the court rejected a contention that the lower court cannot restrict what is designated and strike certain items from the designation of record. *See Ames,* 320 B.R. at 521 n. 4.

is in the best position to know what was *not* considered.

*Id.* at 521.

This Court agrees with the majority position that the authority to strike items from a record on appeal rests within a bankruptcy court's jurisdiction. This determination undoubtably assists the appellate process as an appellate tribunal will not be burdened with sifting through improper designations. As in this case where the record originated from a proceeding before a bankruptcy court, efficiency suggests that a dispute over such record should be decided by the bankruptcy court.

Sending an improper record up on appeal and having the appellate court initially hear requests to remove items that should not have been designated in the first place also does not "promote[ ] the speed and efficiency goals of the Bankruptcy Code[.]" *Off. Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Federal–Mogul Global, Inc.),* 330 B.R. 133, 154–55 (D.Del.2005). *See also Saco,* 13 B.R. at 229 n. 5 ("In addition to promoting sound and efficient judicial administration by relieving [a]ppellate [p]anels of the burden of resolving frivolous designations of overzealous counsel at the very outset of an appeal, the proposed procedure will relieve the bankruptcy clerk from the burden of assembling and transmitting unnecessary records to the [a]ppellate [p]anel.").

For these reasons, the Court adopts the majority position and finds that it has the authority to adjudicate disputes over the contents of a record on appeal.

### 3. Minority Position—A Lack of Authority

The minority position, as articulated in *Dow,* essentially holds that a bankruptcy court lacks the power under Rule 8006 to grant a motion to strike designated items from the record on appeal. According to the *Dow* court, the plain language of Rule 8006 does not provide bankruptcy courts with the authority to strike items from a record on appeal. "Under the well-accepted rule of statutory construction stated as expressio unius est exclusio alterius, the express inclusion of one item of a class excludes others of the same class. The only kind of modification permitted under R. 8006 would thus be addition to, and not exclusion from, the record." *Dow,* 263 B.R. at 546 (quoting *Berge v. Sweet (In re Berge),* 37 B.R. 705, 708 (Bankr.W.D.Wis. 1983)).[7]

Before examining *Dow's* holding that bankruptcy courts do not have the authority to strike items from the record on appeal, the Court notes that *Dow* is distinguishable from the present case. In *Dow,* the debtor sought to strike items from the record on appeal that had been apparently *"available* for consideration by the bankruptcy court[,]" because the items came from the underlying record created in the bankruptcy case. *Id.* (citation omitted). In contrast, the Disputed Items in this case were *not available* to the Court prior to its entry of the Order. The Disputed Items consist of filings from different cases before different courts that were never presented to this Court for its review. In fact, most of the Disputed Items did not even exist at the time the Court issued its Order.

---

7. *Contra* 10 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 8006.03[1], (15th ed. rev.2005) (referencing *Berge* and stating "at least one court has held that the appellee may only add to, but not subtract from, the record on appeal. *This decision is probably incorrect."*) (emphasis added) (footnotes omitted).

The Court rejects *Dow's* reliance on the strict language of Rule 8006. Rather, the "strict language" of the rule simply does not speak to the issue of whether bankruptcy courts can properly review disputes over a record on appeal. Instead the reasoning employed in *Tobago Bay*, as it dealt with this "jurisidictional lacuna," is far more persuasive.

> Jurisdiction of appeals from bankruptcy courts is vested in the district courts. 28 U.S.C. § 158(a). Section 158(c) further provides that: "[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...." 28 U.S.C. § 158(c).
>
> The procedure governing appeals from the district court to the court of appeals is provided for in the Federal Rules of Appellate Procedure. Fed. R.App.P. 1(a) (1991). Under 28 U.S.C. § 158(c), the same procedure set forth in Rule 1(a) of the Federal Rules of Appellate Procedure applies to appeals taken from the bankruptcy court to the district court. Although the Federal Rules of Bankruptcy Procedure do not provide a method to correct or modify the record on appeal, the Federal Rules of Appellate Procedure do so provide. Fed. R.App.P. 10(e). Rule 10(e) provides that if any difference arises concerning the record in the district court, the difference shall be submitted to and settled by the district court, the court in which the record was made. Fed.R.App.P. 10(e). Since the bankruptcy court was the court in which the original record was made, the parties' difference of opinion concerning the record should be submitted to and settled by the bankruptcy court. Accordingly, the court finds that it retains jurisdiction for the limited purpose of adjudicating this dispute concerning the contents of the record on appeal.

*Tobago Bay*, 142 B.R. at 536 (case citations omitted).

According to *Tobago Bay*, reliance by bankruptcy courts on the Federal Rules of Appellate Procedure is appropriate in bankruptcy appeals, particularly when the Bankruptcy Rules do not speak to a question of appellate procedure. The Court agrees with this proposition because 28 U.S.C. § 158(c) provides that bankruptcy appeals shall generally be taken in the same manner as district court appeals, where the Federal Rules of Appellate Procedure are in force. When "[t]he Bankruptcy Rules do not provide an answer[,] [c]ourts construing other provisions of the Bankruptcy Rules have looked to analogous provisions in the Federal Rules of Appellate Procedure, governing appeals to the courts of appeals, for guidance...." *A. Marcus, Inc. v. Farrow*, 94 B.R. 513, 514 (N.D.Ill.1989) (citation omitted). *See also U.S. v. Fowler (In re Fowler)*, 394 F.3d 1208, 1215 (9th Cir.2005) ("[L]ooking to a parallel federal appellate rule for guidance in applying a reasonable standard to a motion for rehearing[,]" was appropriate because the bankruptcy "rule simply does not speak to the issue."); *Henkel v. Lickman (In re Lickman)*, 288 B.R. 584, 585 (Bankr.M.D.Fla.2003) ("[T]he court can look to the Federal Rules of Appellate Procedure for guidance in interpreting the bankruptcy appellate rules.") (citation omitted); *BCORP–HRT, LLC v. Lobb (In re Lobb)*, 66 Fed.Appx. 164, 167 (10th Cir. May 2, 2003) (finding it appropriate to look to Federal Rule of Appellate Procedure from which Bankruptcy Rule was derived where Bankruptcy Rule is silent as to the appropriate standard for granting a rehearing); *Kosmala v. Imhof (In re Hessco Indus., Inc.)*, 295 B.R. 372, 375 (9th Cir. BAP 2003) (same); *Zegeye v. Keshishian*

*(In re Zegeye),* 2005 WL 544763, at *2 (D.Md. March 4, 2005) (same); *Olson v. U.S.,* 162 B.R. 831, 834 (D.Neb.1993) (same).

Unquestionably, Rule 8006 does not spell out how disputes involving a record on appeal should be handled; however, looking to the analogue of Rule 8006—Rule 10(e) of the Federal Rules of Appellate Procedure is appropriate. In *Tobago Bay,* a bankruptcy court applied Appellate Rule 10(e) to strike items designated in the record on appeal because the "Federal Rules of Bankruptcy Procedure d[id] not provide a method to correct or modify the record on appeal[.]" 142 B.R. at 536. *See also GHR Energy Corp. v. Crispin Co. Ltd. (In re GHR Energy Corp.),* 791 F.2d 1200, 1201 (5th Cir.1986) (noting that Appellate Rule 10(e) applies to bankruptcy appeals); *United Bank of Denver Nat'l Assoc. v. Potter (In re Potter),* 131 B.R. 164, 165–66 (D.Colo.1991) ("Although the Bankruptcy Rules do not expressly provide for application of the Federal Rules of Appellate Procedure to appeals from the Bankruptcy court, it seems sensible to look to the practice and decisions under Appellate Rule 10 for guidelines to understanding Rule 8006.") (citation and quotation marks omitted); *In re Chateaugay Corp.,* 64 B.R. 990, 995 (S.D.N.Y.1986) (relying on Appellate Rule 10(e) and Rule 8006 to resolve a dispute over the items properly included in the record on appeal in a bankruptcy matter); *Nahodil v. Rodman (In re W.T. Grant Co.),* 432 F.Supp. 105, 106 n. 2 (S.D.N.Y.1977) ("Our reference to Rule 10(e) of the Federal Rules of Appellate Procedure for guidance in interpreting Bankruptcy 806 [predecessor to present Fed. R. Bankr.P. 8006 and similar to it in all respects pertinent to this decision] is appropriate."); *Lickman,* 288 B.R. at 585 ("The Committee Notes to F.R.B.P. 8006 and 8007, however, indicate that these rules are condensed versions of the corresponding Federal Rules of Appellate Procedure."); *Saco,* 13 B.R. at 228–29 (referencing Appellate Rule 10(e) in deciding dispute over designation of the contents of a record on appeal); Collier, ¶ 8006.03[1] ("It seems sensible to look to the practice and decisions under Appellate Rule 10 for guidelines to understanding Rule 8006.").

Appellate Rule 10 provides that, "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Fed. R.App. P. 10(e)(1). Thus, if any difference arises concerning the record in the district court, the difference shall be submitted to and settled by the district court, the court in which the record was made. *See id.* Applying Appellate Rule 10(e) to the present situation *also* directs this Court, where the original record was made, to decide this dispute over the record on appeal.

The Court rejects the minority position espoused by *Dow.* The minority position ignores the directive in 28 U.S.C. § 158(c) that provides that bankruptcy appeals shall generally be taken in the same manner as district court appeals, which are governed by the Federal Rules of Appellate Procedure. Applying Appellate Rule 10(e) to the present case and adopting the majority position lead the Court to the same result—that it has the authority to determine a dispute over the record on appeal. Lastly, adopting the minority position would lead to the untenable result of permitting any party appealing a decision of a bankruptcy court to designate absolutely any item it wishes for the appellate record.

For all these reasons, the Court finds that it does have jurisdiction to rule on whether the Disputed Items are properly included within the Designation.

## B. Merits

Having determined that we have jurisdiction to correct or modify the record on appeal, the Court will now consider whether the Disputed Items are properly included within the Designation filed by Amedisys. Because the Disputed Items were neither filed with or presented to the Court, nor considered when the Order was rendered, they will be stricken from the Designation. As the court noted in *Ames,* "[t]he record on appeal should contain all items considered by the bankruptcy court in reaching a decision.... Conversely, if an item was not considered by the court, it should be stricken from the record on appeal." 320 B.R. at 521 (quoting *Barrick Group,* 100 B.R. at 154).

"Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court." *Zer–Ilan v. Frankford (In re CPDC, Inc.),* 337 F.3d 436, 443 (5th Cir. 2003) (citations omitted). In *Zer–Ilan,* the Fifth Circuit held that the district court erred in allowing the appellants "to supplement the record with documents and testimony that were not offered and admitted before the bankruptcy court entered summary judgment." *Id.* (citation omitted). *See also Sipes v. Atl. Gulf Cmtys. Corp. (In re Gen. Dev. Corp.),* 84 F.3d 1364, 1369 (11th Cir.1996) (supplementation of record on appeal allowed only by documents considered by the bankruptcy court).

In an appeal from a bankruptcy court's denial of a motion to dismiss, the United States District Court for the Northern District of Texas noted, "[a]n item that was not considered by the trial court in reaching its decision should be stricken from the record on appeal." *Brewer v. N.Y. St. Dep't of Corr. Servs. (In re Value–Added Commc'ns Inc.),* 224 B.R. 354, 357 (N.D.Tex.1998) (citing *Barrick Group,* 100 B.R. at 154) (other citation omitted). While "[t]he record should contain all documents necessary to afford a full understanding of the case.... Items not before the Bankruptcy Court and not considered by it in rendering its decision may not be included in the record." *Neshaminy,* 62 B.R. at 802 (citations and internal quotation marks omitted). Only items that "bear[ ] on the proceedings below *and* [are] considered by the bankruptcy judge in reaching [the] decision[,]" shall be included in the record on appeal. *Chateaugay Corp.,* 64 B.R. at 995 (emphasis added). *See also Exco Res., Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron Corp.),* 2003 WL 223455, at *4 n. 3 (S.D.N.Y.2003) (citations omitted) ("On appeal, this Court will only consider the record that was before the bankruptcy court. The Court, therefore, will disregard any argument or document that appears for the first time on this appeal, including but not limited to, the newspaper articles that appeared after the bankruptcy court's May 23, 2002 order.").

Similarly, in the context of appeals from a district court to the court of appeals, the Sixth Circuit has held that review of a district court's grant of summary judgment "is limited to the evidence before the district court when it ruled." *Campbell v. Potash Corp. of Sask., Inc.,* 238 F.3d 792, 797 (6th Cir.2001). Evidence regarding summary judgment which was presented by the nonmoving party after a district court's grant of a summary judgment motion is not considered by the court of appeals in reviewing the grant of summary judgment. *See Cacevic v. City of Hazel Park,* 226 F.3d 483, 491 (6th Cir.2000). *See also Dickerson v. McClellan,* 101 F.3d 1151, 1164 (6th Cir.1996) (noting that evi-

dence introduced at trial would not be considered in appeal of summary judgment ruling).

As in *Ames*, it is uncontested—none of the Disputed Items were filed with the Court. And, as in *Ames*, the Court never reviewed or considered any of the items prior to entering the Order. Further, and even more compelling than in *Ames*, is the fact that many of the Disputed Items *did not even exist at the time the Order issued.* All of the litigation papers from the UAT Lawsuit and the paperwork from Mr. Snoble's criminal case and Ms. Gibson's sentence were filed subsequent to the issuance of the Order (by over five months). It is obvious that these challenged items could not have been considered by this Court in rendering the decision on summary judgment, because the items postdate the Order. *See Kabayan v. Yepremian (In re Yepremian)*, 116 F.3d 1295, 1297 (9th Cir.1997) ("Because both the deposition and the declaration were taken after the bankruptcy court granted summary judgment for Sanwa, they are not part of the record on appeal and we cannot consider them.") (citations omitted).

Only the filings in Mr. Stucke's criminal case and those leading up to Ms. Gibson's sentence predate the Order, yet, as to those items, Amedisys presented nothing to show that they were ever filed, put before, or let alone considered by this Court before entry of the Order. Including the Disputed Items that predate the Order in the record on appeal, when they were never put before the Court, would be plainly improper.

Lastly, the fact that the Disputed Items predate the Stipulation, which is presumably serving as the final appealable order in this case, is of no import. While the Stipulation may have the effect of altering the ultimate appealability of the Order, it does not change the scope of the record or the facts on which the Order issued.

## V. Conclusion

For the foregoing reasons, the Movants' Motion to Strike is **GRANTED**, and the Disputed Items will be stricken from the Designation before its transmittal to the district court.

**IT IS SO ORDERED.**